No. 25-1889

---

UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

---

NETCHOICE, LLC,
Plaintiff-Appellee,

v.

TIM GRIFFIN, IN HIS OFFICIAL CAPACITY AS
ATTORNEY GENERAL OF ARKANSAS,
Defendant-Appellant.

---

On Appeal from the United States District Court
for the Western District of Arkansas
No. 5:23-CV-5105 (Hon. Timothy L. Brooks)

---

**Motion to Dismiss the Appeal as Moot and Vacate the District
Court's Judgment or, in the Alternative,
to Review the Amended Law**

---

## INTRODUCTION

The main issues in this appeal are whether Act 689 of 2023 (the Social Media Safety Act) violates the First Amendment and Due Process Clause. But the Arkansas General Assembly has now substantially amended the Social Media Safety Act with Act 900 of 2025. That means whether the district court was correct to conclude that Act 689 was unconstitutional is moot and any opinion on that question would be an impermissible advisory opinion. Accordingly, this Court should dismiss this appeal as moot and vacate the district court's judgment. Vacatur is the usual practice, and it is the appropriate one here because this appeal has become moot due to happenstance, not any voluntary action by a party, and vacatur would serve the public interest.

Alternatively, if this Court concludes that Act 900 did not substantially amend Act 689 and this appeal is not moot, the Court should review the district court's judgment in light of current law. Doing so is consistent with this Court's precedent and would promote judicial efficiency.

**BACKGROUND**

An internet trade association, NetChoice LLC, sued Defendant Attorney General Tim Griffin, alleging that Arkansas's Social Media Safety Act (Act 689 of 2023) was unconstitutional. *See* Ex. 1 at 3. Specifically, it argued that the Act violated the First Amendment rights of users on its members' platforms and violated the due process rights of its members. *See id.* at 19, 34.

Act 689 was designed "'to protect children from the widespread dangers of social media' and 'prevent[] online sexual predators from exploiting children in online space' by requiring 'reasonable age verification.'" *Id.* Towards that end, the Act prohibited social media companies from allowing "an Arkansas user who is a minor to be an account holder on the social media company's social media platform unless the minor has the express consent of a parent or legal guardian." Ark. Code Ann. § 4-88-1402(a) (2023). To implement that prohibition, the Act required social media companies to "use a third-party vendor to perform reasonable age verification before allowing access to the social media company's social media platform." *Id.* § -1402(c)(1).

The Act defined "social media company" as "an online forum that a company makes available for an account holder to" (1) create a profile or account "for the primary purpose of interacting socially with other profiles and accounts," (2) "[u]pload or create posts or content," (3) "[v]iew posts or content of other account holders," and (4) "[i]nteract with other account holders or users, including . . . through request and acceptance." *Id.* § -1401(7)(A). It expressly excluded certain types of companies from the definition, including companies that offer "subscription content in which users follow or subscribe unilaterally and whose platform's primary purpose is not social interaction," "interacting gaming," certain services "for kindergarten through grade twelve (K-12) schools," and "career development opportunities, including professional networking." *Id.* § -1401(7)(B)(i)–(iv). The Act also provided a definition of a social media platform as a "service or application" that "has users in Arkansas" and has "a substantial function" of connecting users so they can "interact socially with each other within the service or application." *Id.* § -1401(8)(A). And the Act excluded from the definition certain services or applications "if the predominant or exclusive function" is of a certain type (*e.g.*, "[e]mail," "[d]irect messaging," streaming of "only licensed media in a

continuous flow from the service . . . to the direct user," "[n]ews, sports, entertainment, or other content that is preselected by the provider and not user generated," "online shopping or e-commerce"). *Id.* § -1401(8)(B).

NetChoice moved for summary judgment, which the district court granted on March 31, 2025. *See* Ex. 1 at 3. Based on Act 689's definitions, the district court concluded the Act drew content-based distinctions (such as by excluding companies that offer interactive gaming) and speaker-based distinctions (such as by "privileg[ing] institutional content creators" like "traditional journalists" over users of online services like a Tik-Tok chef). *See id.* at 22–24. It thus held that the State had "the burden of demonstrating [Act 689] survives strict scrutiny." *Id.* at 24. The court then concluded that the Act was not narrowly tailored because it was underinclusive. *Id.* at 26. It noted that some websites that are harmful to minors were not considered social media platforms and remained unregulated by the Act. *See id.* at 26–29. It also found the Act underinclusive because it "does nothing to protect users who have now been reliably identified as minors" other than requiring parental consent. *Id.* at 29. In addition, the district court concluded that the Act failed strict scrutiny because imposing "an age-verification requirement for account creation

is maximally burdensome." *Id.* at 30.  Turning to the due process claim, the district court concluded the Act was void for vagueness "because it fail[ed] to adequately define which entities are subject to its require-ments, risking chilling effects and inviting arbitrary enforcement." *Id.* at 36.

After concluding the Act was an unconstitutional "content-based re-striction on speech" and "unconstitutionally vague," *id.* at 33, 36, the dis-trict court purported to permanently enjoin Act 689 itself, *id.* at 41.  The separate judgment, however, directed the permanent injunction towards Defendant, prohibiting him from enforcing Act 689 in its entirety.  Ex. 2 at 1.

On April 10, 2025, the Arkansas General Assembly passed Act 900 to amend the Social Media Safety Act.  Ex. 3.  Among other changes, Act 900 completely rewrites several definitions.  For example, it deletes the definition of social media company and defines minor as being a person under 16 years of age (instead of 18 years of age).  Act 900, § 1(9).  Act 900 also defines "social media platform" to "mean[] a business entity or organization that operates an online platform, application, or service" that has the following six characteristics:

(i) Is designed to facilitate user-to-user, user-to-group, or user-to-public interaction, expression, or communication;

(ii) Assigns, utilizes, or relies on a unique identifier, username, profile name, or image that is associated with a specific user account;

(iii) Provides mechanisms for a user to create an online profile comprised of personally identifiable information or professional information, including without limitation a user's name, username, address, date of birth, educational pedigree, professional details, interests, activities, or connections;

(iv) Employs features that allow a user to connect, follow, or establish a relationship with other users and creates a network of interactions either in real time or asynchronously, including without limitation virtual likes and dislikes;

(v) Generates revenue primarily through user engagement, including without limitation through advertising, user data monetization, or premium content; and

(vi) Is accessed by Arkansas users.

*Id.* § 1(11)(A). And the definition expressly excludes "an email service provider, a not-for-profit organization, a public or private school, business-to-business software, a common carrier, or a broadband internet service." *Id.* § 1(11)(B).

Act 900 also makes other significant changes, including requiring social media platforms to stop notifications, "other than safety or privacy-related alerts," between 10 p.m. and 6 a.m. and giving "a parent or guardian" the ability "to modify this setting." *Id.* § 2(d)(2)(A). In addition, Act

900 requires that social media platforms give minors "the most protective level of control for privacy and safety offered by the covered social media platform" and provide parents with "an easily accessible online dashboard" that enables them "to view and understand [their] child's use habits" and limit their "minor child's access to the covered social media platform" or "logical portions" of it. *Id.* § 2(d)(2)(B), (4). Other changes include requiring social media platforms to "implement technological measures to prevent circumvention of age verification protocols," *id.* § 5(a), and adding a severability provision, *id.* § 7.

On April 28, 2025, Defendant filed a motion (and brief in support) under Federal Rule of Civil Procedure 59(e) to alter or amend the judgment, Ex. 4–5, arguing that the district court issued an overbroad injunction that effectively sought to "strike the Act from the books" and that exceeded its authority, *see* Ex. 5 at 4–8. Defendant also argued that the judgment should be amended given "the General Assembly's enactment of Act 900 of 2025" that would generally go into effect 90 days after the legislative session's adjournment. *Id.* at 8–9. Defendant noted that this "imminent change in law highlights how the judgment" exceeded the district court's "equitable powers because the judgment enjoins Defendant

from enforcing the entire Act, including § 4-88-1403(b)(2), which author-izes the Attorney General to 'initiate an enforcement action' for violations of § 4-88-1402." *Id.* at 9.[1] Defendant explained that "§ 4-88-1402 ha[d] been amended" and that the district court lacked the "authority to enjoin Defendant from enforcing the amended law before there has been any challenge to, much less determination of, its constitutionality." *Id.* at 9.

Before the district court ruled on the motion to alter or amend the judgment, Defendant appealed from the March 31, 2025 summary judg-ment, "out of an abundance of caution," in case the district court treated the "Rule 59(e) motion as a different type of motion that would not extend the time allowed to file a notice of appeal." Ex. 6 at 1. Defendant then filed an unopposed motion to hold this appeal in abeyance until the dis-trict court "exercise[d] its jurisdiction to rule on Defendant's Rule 59(e) motion," *see* Unopposed Abeyance Mot. 3, which this Court granted, *see* May 13, 2025 Order.

---

[1] Defendant also flagged that the case would "soon become moot" once the new law's effective date passed, which would "eventually make vacatur of the judgment" appropriate. *Id.* at 9.

On July 23, 2025, the district court denied the Rule 59(e) motion, and on July 31, 2025, Defendant filed an amended notice of appeal to include that denial within the scope of the appeal, Ex. 7. On August 5, 2025, Act 900 of 2025 became effective, Op. Ark. Att'y Gen. No. 32 (2025),[2] except for § 2 that will "be effective on and after one (1) year following the enactment of [Act 900]," Act 900, § 8, which was enacted on April 21, 2025.

Given the intervening changes in operative law, Defendant now files this motion to dismiss the appeal as moot and vacate the district court's judgment or, in the alternative, requests that the Court review the district court's judgment in light of the amended law.

## ARGUMENT

## I. THIS APPEAL BECAME MOOT BY CIRCUMSTANCES OUTSIDE DEFENDANT'S CONTROL.

The Arkansas Legislature substantially rewrote the Social Media Safety Act with Act 900 of 2025, which moots this appeal about whether Act 689 violated the First Amendment or Due Process Clause. Any opinion about whether the district court was right or wrong to conclude that

---

[2] Available at https://ag-opinions.s3.amazonaws.com/uploads/2025-032.pdf.

Act 689 was unconstitutional would thus be an impermissible advisory opinion.

Article III only permits federal courts to adjudicate "actual, ongoing cases or controversies" and denies them "the power to 'decide questions that cannot affect the rights of litigants in the case before them.'" *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990) (quotation omitted). "When a law has been amended or repealed, actions seeking injunctive relief for earlier versions are generally moot." *SD Voice v. Noem*, 987 F.3d 1186, 1189 (8th Cir. 2021) (citation modified); *see, e.g.*, *Am. Bar Ass'n v. FTC*, 636 F.3d 641, 643 (D.C. Cir. 2011) ("It is well established that a case must be dismissed as moot if new legislation addressing the matter in dispute is enacted while the case is still pending."). That is because legislation will generally be "an intervening, independent event [that favors vacatur] and not voluntary action" by a party. *Mille Lacs Band of Ojibwe v. Madore*, 128 F.4th 929, 942 (8th Cir. 2025) (quotation omitted). In contrast, when a defendant revises a challenged ordinance "only in some insignificant respect," a case does not become moot. *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 662 (1993).

Here, Defendant's appeal primarily argues that Act 689 does not violate the First Amendment or Due Process Clause. But those issues are now moot. *See SD Voice*, 987 F.3d at 1189 ("Thus, Defendants' appeal, which asks us to uphold the now-defunct HB 1094 as constitutional, is moot."). While the parties still disagree about whether Act 689 was narrowly tailored or "underinclusive" as the district court held, Ex. 1 at 26, and whether or not the Act was "unconstitutionally vague because it fail[ed] to adequately define which entities are subject to its requirements" as the district court held, *id.* at 36, the resolution of those disagreements is immaterial as Act 689 and the challenged definitions are no longer in effect. This appeal is thus moot.

## II. THE COURT SHOULD VACATE THE DISTRICT COURT'S JUDGMENT AND REMAND THE CASE FOR DISMISSAL OR FURTHER PROCEEDINGS.

Because this appeal is moot, the Court should follow the usual practice: It should dismiss the appeal as moot, vacate the district court's judgment, and remand the case for dismissal or further proceedings.

## A. The appeal became moot by happenstance, and the public interest supports vacatur.

This Court should vacate the district court's judgment because mootness is not attributable to Defendant and vacatur furthers the public interest.

The "ordinary practice" for "disposing of a case that has become moot on appeal is to vacate the judgment with directions to dismiss." *Lewis*, 494 U.S. at 482 (collecting cases). That practice "clears the path for future relitigation of the issues between the parties and eliminates a judgment, review of which was prevented through happenstance," and it preserves "the rights of all parties." *United States v. Munsingwear, Inc.*, 340 U.S. 36, 40 (1950). Although "vacatur is an equitable matter and not automatic in all situations in which a pending case is rendered moot," *Am. Bar Ass'n*, 636 F.3d at 649, "[v]acatur is in order when mootness occurs though happenstance—circumstances not attributable to the parties," *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 71 (1997). One such circumstance is legislative action that moots a case. *See, e.g.*, *Diffenderfer v. Gomez-Colon*, 587 F.3d 445, 451–52 (1st Cir. 2009) ("All circuits to address this issue have held that such legislation is generally considered an intervening, independent event and not voluntary action, particularly

when the governmental entity taking the appeal, as here, is not part of the legislative branch." (collecting cases)); *Madore*, 128 F.4th at 942 (characterizing "[t]he action of a third party, the Minnesota Legislature, in amending" the statute as "[h]appenstance" that "made th[e] appeal moot").

In assessing "fault" for mootness and whether vacatur is warranted, this Court "distinguish[es] between situations where a party's own actions moot a case, and situations where mootness arises from mere 'happenstance.'" *SD Voice*, 987 F.3d at 1190. The Court also considers whether "the public interest supports vacatur." *Madore*, 128 F.4th at 942.

Here, there is no reason for this Court to depart from its "normal practice." *Teague v. Cooper*, 720 F.3d 973, 978 (8th Cir. 2013). Because the appeal "has been rendered moot by events outside the parties' control," it should "vacate the decision of the district court." *Id.* Mootness is attributable to the Arkansas legislature—not the Defendant—so Defendant is not at fault for the mootness of this action. *See Madore*, 128 F.4th at 942. That means Defendant has been "deprived" of "his appeal rights" and the district court's judgment should be stripped of "its binding effect."

*Camreta v. Greene*, 563 U.S. 692, 712 (2011); *see id.* ("'A party who seeks review of the merits of an adverse ruling, but is frustrated by the vagaries of circumstance,' we have emphasized, 'ought not in fairness be forced to acquiesce in' that ruling." (quoting *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership,* 513 U.S. 18, 25 (1994))). Vacatur would thus serve the public interest and promote equity by ensuring that "the rights of all parties are preserved" and that none is prejudiced by a decision that will evade appellate review. *Munsingwear*, 340 U.S. at 40. And that is far from the only reason that vacatur serves the public interest here.

For example, the district court's opinion purports to enjoin the Act itself. *See* Ex. 1 at 41 ("Act 689 of 2023, the 'Social Media Safety Act,' is permanently enjoined." (emphasis omitted)). But that is wrong. Federal courts have no power to issue an injunction that operates against the statute itself as if they were striking a statute from the books. *See Commonwealth of Massachusetts v. Mellon,* 262 U.S. 447, 488 (1923) ("If a case for preventive relief be presented, the court enjoins, in effect, not the execution of the statute, but the acts of the official, the statute notwithstanding."); *Driftless Area Land Conservancy v. Valcq,* 16 F.4th 508, 521 (7th Cir. 2021) ("A federal injunction does not erase an unconstitutional

state law from existence; federal courts cannot repeal state laws."); *see generally* Jonathan F. Mitchell, *The Writ-of-Erasure Fallacy,* 104 Va. L. Rev. 933 (2018). To be sure, the separate judgment (that is not readily accessible on databases like Westlaw) directs the injunction to Defendant not the statute itself, Ex. 2, but the opinion will sow confusion if allowed to stand.

Moreover, the district court's declaration that a democratically enacted statute is unconstitutional and cannot be enforced harms the public's interest in the democratic process. *Cf. Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 451 (2008) ("We must keep in mind that '[a] ruling of unconstitutionality frustrates the intent of the elected representatives of the people.'" (quotation omitted)); *Trump v. CASA, Inc.*, 145 S. Ct. 2540, 2562 (2025) ("[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." (quotation omitted)). And because the injunction extends to the provision granting the Attorney General enforcement authority, it could hinder his ability to enforce the duly

enacted amended law (Act 900)—even though there has been no determination yet of its constitutionality.[3]

What is more, both the original and revised Social Media Safety Act unquestionably advance significant public interests: Protecting children from the many dangers posed by social media and safeguarding parental rights. Indeed, even the district court recognized that there is a "compelling interest" in preventing harms to children that "unfettered social media access can and does" cause. Ex. 1 at 26. Accordingly, the question was not whether the law's purpose was consistent with the public interest, but only whether the law was sufficiently tailored to that purpose, what level of scrutiny applies in reviewing the law, and whether the law's provisions were clear. It is thus in the public interest to vacate the

---

[3] The district court enjoined Defendant from enforcing all of Act 689, including the provision that gives the Attorney General authority to enforce § 4-88-1402. Section -1402 and its definitions have been amended by Act 900, §§ 1–2, and the district court lacked authority to enjoin the Attorney General from enforcing future amendments. NetChoice, however, takes the position that the injunction of Act 689 makes "[m]ost of Act 900" unenforceable. *See* Compl., *NetChoice*, No. 5:25-cv-05140 (June 27, 2025), ECF 2 at 24. Therefore, if the Court does not vacate the district court judgment due to the change in the legal framework, some subsidiary issues on appeal, including whether the district court's injunction exceeded its equitable powers and is overbroad, are not moot because they will affect Defendant's legal rights.

district court's determination regarding a superseded law with an undisputedly laudable aim and to allow similar questions regarding the revised law "to be decided in a live case or controversy" that will be subject to appellate review. *See Madore*, 128 F.4th at 943 (vacating a district court decision so an important constitutional issue could be decided in a case that would be subject to appellate review). And that is especially true here because the district court did not have the benefit of the Supreme Court's recent guidance regarding how to analyze age-verification requirements. *See generally Free Speech Coal., Inc. v. Paxton*, 145 S. Ct. 2291 (2025).

Therefore, this Court should follow this usual practice and vacate the district court's judgment to preserve the parties' rights and promote the public interest.

### B. Remand for dismissal or further proceedings is appropriate.

In addition to dismissing this appeal as moot and vacating the district court's judgment, the Court should remand the case for dismissal or further proceedings.

Typically, courts "dispos[e] of a case that has become moot on appeal" by "vacat[ing] the judgment with directions to dismiss." *NY State*

*Rifle & Pistol Ass'n, Inc. v. City of New York*, 590 U.S. 336, 339 (2020) (per curiam) (quoting *Lewis*, 494 U.S. at 482). But "in instances where the mootness is attributable to a change in the legal framework governing the case, and where the plaintiff may have some residual claim under the new framework that was understandably not asserted previously, [the Court's] practice is to vacate the judgment and remand for further proceedings in which the parties may, if necessary, amend their pleadings or develop the record more fully." *Id.*

Because this appeal became moot due to a change in the legal framework, this Court may remand the case for further proceedings rather than instructing the district court to dismiss it as moot. NetChoice, however, has already filed a separate challenge to the amended law. *See* Compl., *NetChoice v. Griffin*, No. 5:25-cv-05140 (W.D. Ark. June 27, 2025). So if the Court decides to instruct the district court to dismiss this case as moot, NetChoice could alternatively amend its complaint in the separate action.

**III. IN THE ALTERNATIVE, THIS COURT SHOULD REVIEW THE CURRENT LAW.**

As explained above, this appeal is moot, and the Court should vacate the district court's judgment and remand. But if the Court concludes that this appeal is not moot, it should review the district court's judgment in light of the current law.

When amendments to statutes are not substantial, this Court concludes an appeal "is not mooted by the change" and "does not divest the court of the power to decide the case." *Rosenstiel v. Rodriguez*, 101 F.3d 1544, 1548 (8th Cir. 1996). In those circumstances, this Court reviews the "judgment appealed from in the light of the [state] statute as it now stands, not as it stood when the judgment below was entered." *Id.*; *see Smithfield Foods, Inc. v. Miller*, 367 F.3d 1061, 1064 (8th Cir. 2004) ("We must review the challenged [state] law as it now exists, not as the law existed at the time of the district court's judgment.").

If this Court concludes that the appeal has not been mooted by the intervening statutory amendments, then it should review Arkansas's law as it currently exists. *See Miller*, 367 F.3d at 1064; *Rosenstiel*, 101 F.3d at 1548. And it should inform the parties that it plans to review the

revised law, so that the parties can tailor their appellate briefs accordingly and assist the Court's review.

## CONCLUSION

For the foregoing reasons, the Court should dismiss this appeal as moot and vacate the district court's judgment. In the alternative, the Court should review the district court's judgment in light of the current law and advise the parties of its intent to do so.

Respectfully submitted,

TIM GRIFFIN
  Arkansas Attorney General

AUTUMN HAMIT PATTERSON
  Solicitor General

NOAH P. WATSON
  Deputy Solicitor General

RYAN HALE
  Senior Assistant Attorney General

OFFICE OF THE ARKANSAS
  ATTORNEY GENERAL
101 West Capitol Avenue
Little Rock, AR 72201
(501) 295-7419
ryan.hale@arkansasag.gov

*Attorneys for Defendant-Appellant*

## CERTIFICATE OF COMPLIANCE

I certify that this motion complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because it contains 3,845 words, excluding the parts exempted by Fed. R. App. P. 32(f).

Pursuant to Fed. R. App. 27(d)(1)(E), I also certify that this motion complies with the requirements of Fed. R. App. P. 32(a)(5)-(6) because it has been prepared in 14-point Century Schoolbook, using Microsoft Word.

I further certify that this PDF file was scanned for viruses, and no viruses were found on the file.

*/s/Ryan Hale*
Ryan Hale


## CERTIFICATE OF SERVICE

I certify that on August 18, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which shall send notification of such filing to any CM/ECF participants.

*/s/Ryan Hale*
Ryan Hale