No. 25-1889

UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

NETCHOICE, LLC,
Plaintiff-Appellee,

v.

TIM GRIFFIN, IN HIS OFFICIAL CAPACITY AS
ATTORNEY GENERAL OF ARKANSAS,
Defendant-Appellant.

On Appeal from the United States District Court
for the Western District of Arkansas
No. 5:23-CV-5105 (Hon. Timothy L. Brooks)

**Reply in Support of Motion to Dismiss the Appeal as Moot and Vacate the District Court's Judgment or, in the Alternative, to Review the Amended Law**

Appellate Case: 25-1889   Page: 1   Date Filed: 09/25/2025 Entry ID: 5561527

INTRODUCTION

The Arkansas General Assembly has substantially amended Act 689 of 2023 (the Social Media Safety Act), which means the issue of whether that Act was constitutional before it was amended is now moot. Accordingly, this Court can either dismiss the appeal as moot and vacate the district court's judgment or it can review the constitutionality of the amended law. NetChoice disagrees with the first option; however, it wholly embraces the second. This Court should therefore grant Defendant's motion.

ARGUMENT

I. **THE PARTIES AGREE THAT WHETHER ACT 689 WAS UNCONSTITUTIONAL BEFORE THE 2025 AMENDMENTS IS MOOT.**

As Defendant explained, the Arkansas General Assembly substantially rewrote the Social Media Safety Act with the enactment of Act 900 of 2025, which moots issues in this appeal about whether the unamended law, Act 689, violated the First Amendment or Due Process Clause. Mot. 9. Thus, if this Court opined about the validity of the unamended law, it would be issuing an impermissible advisory opinion. *Id.* at 9–10.

In response, NetChoice agrees that the issue of whether the unamended law is constitutional is now moot. *See* Resp. 1 (agreeing this

1

Court cannot review "the law [that] existed at the time of the district court's judgment" (quoting Mot. 19)). But it argues the case is not moot (and assumes that necessarily means the appeal is not moot) because the amendments "exacerbate" the Article III injury by regulating even more members and harming them in the same way. *See* Resp. 1,11. This alleged harm is different to the extent that NetChoice argued below that Act 689 harmed its members due to alleged vagueness about what entities were subject to Act 689's requirements and that the Act failed constitutional scrutiny because it was underinclusive. R. Doc. 67 at 26, 29–30. Assuming arguendo those criticisms were valid, the amendments have fixed them.

In any event, Defendant agrees that NetChoice's members are regulated by the Social Media Safety Act as amended. Defendant accordingly agrees that, *if* this Court concludes that the changes are not substantial enough to moot this appeal, *see Rosenstiel v. Rodriguez*, 101 F.3d 1544, 1548 (8th Cir. 1996), the question of whether the amended law is constitutional is not a moot issue.

Appellate Case: 25-1889    Page: 3    Date Filed: 09/25/2025 Entry ID: 5561527

## II. IF THE APPEAL IS DISMISSED AS MOOT, THE COURT SHOULD VACATE THE DISTRICT COURT'S JUDGMENT.

If this Court concludes that this appeal is moot, then it should follow the "ordinary practice" and vacate the district court's judgment. *See Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 482 (1990) (collecting cases). As Defendant explained, Mot. 12, it would "clear[] the path for future relitigation of the issues between the parties and eliminate[] a judgment, review of which was prevented through happenstance," and it would preserve "the rights of all parties." *United States v. Munsingwear, Inc.*, 340 U.S. 36, 40 (1950). And because the district court purported to enjoin the law itself, vacatur would also serve the public interest by preventing the opinion from sowing confusion about the proper role of federal courts.

NetChoice's main response is to argue that any mootness occurred not by happenstance but by "the actions of the state's executive," specifically, Governor Sanders's support for the legislation and the fact that she "signed the Amendment into law." Resp. 19. But that not only overlooks the legislature's role in legislation, but it also glosses over the fact that Defendant is not the Governor but the Attorney General—a completely distinct elected official—and that Arkansas does not have a unitary executive. *See* John Harrison, *Addition by Subtraction*, 92 Va. L. Rev. 1853,

3

1869 n.26 (2006) ("States that have elected Attorneys General have non-unitary executives . . . ."); Mark H. Allison, *Sovereign Immunity: Holford Bonds, the Brooks-Baxter War, and the Constitutional Convention of 1874*, 54 Ark. Law. 44, 45 (Winter 2019) (explaining that the Arkansas Constitution "creat[es] a plural executive"). Unsurprisingly, NetChoice can point to no caselaw that says it is appropriate to attribute the actions of a governor or legislature to an attorney general in this fashion.

Next, NetChoice argues that vacatur would not be in the public interest based on the district court's conclusions about Act 689 before the amendments. *See* Resp. 20. The law, however, has been amended. And NetChoice cannot dispute that even the district court acknowledged that the unamended law served a "compelling interest" in protecting children. Ex. 1 at 26.

In any event, NetChoice also argues that the preliminary injunction would remain in place if the judgment was vacated. Resp. 18. That means that NetChoice cannot claim it will be harmed at all, much less suffer irreparable harm, if the district court's judgment is vacated.

Finally, NetChoice does not dispute that the district court's opinion mistakenly purported to enjoin the statute, but it insists this is

4

insignificant because other federal courts have made similar mistakes. Resp. 22. But that is even more reason to not let this erroneous opinion stand. The district court's mistake reflects a fundamental misunderstanding about the limits of a federal court's equitable power and leaving the opinion untouched would perpetuate the continuing issue of courts granting relief that exceeds their authority. *See, e.g.*, *Whole Woman's Health v. Jackson*, 595 U.S. 30, 44 (2021) ("[U]nder traditional equitable principles, no court may lawfully enjoin the world at large, or purport to enjoin challenged laws themselves." (quotations omitted)); *Trump v. CASA, Inc.*, 606 U.S. 831, 842–47 (2025) (explaining that federal courts lack the equitable authority to issue a "universal injunction" or analogous forms of relief). The public interest therefore supports vacating the district court's judgment if this Court decides to dismiss the appeal as moot.

### III. ALTERNATIVELY, THIS COURT SHOULD REVIEW THE CURRENT LAW.

If this Court decides the appeal is not moot due to the intervening statutory amendments and does not dismiss this appeal and vacate the district court's judgment, then it should review the constitutionality of Arkansas's current law as Defendant explained in its motion. *See* Mot. 19 (quoting *Smithfield Foods, Inc. v. Miller*, 367 F.3d 1061, 1064 (8th Cir.

5

1996); *Rosenstiel*, 101 F.3d at 1548). NetChoice agrees and even concluded its response by arguing that this Court should "adjudicate the constitutionality of the amended Act." Resp. 22. NetChoice argued that not only is this Court "equipped to decide the merits after briefing and argument," but that it also would be "more efficient than sending this long-running case back to a district court that has already made its views on the merits plain." Resp. 2. Defendant agrees that it would be more efficient, preserve party (and taxpayer) resources, and conserve judicial resources for this Court to decide this case on the merits.[1] Accordingly, the parties agree that this Court should review the current law.

---

[1] Depending on what level of scrutiny the Court applies to Arkansas's law, it is possible that additional factual development may be necessary to assess whether the law is appropriately tailored, in which case remand would be appropriate at that point. *Compare Rosenstiel*, 101 F.3d at 1548, 1555 (concluding that the amendment to the law did not moot the case and that "even if the challenged provisions somehow burden . . . First Amendment rights, the provisions pass constitutional muster"), *with Miller*, 367 F.3d at 1664–66 (concluding the "amendment does not moot this appeal" and remanding for additional discovery to assess whether the amended law has a discriminatory purpose or effect). Even in that circumstance, however, it would still promote efficiency for this Court to hear the case on the merits and decide what level of scrutiny applies.

## Conclusion

Given the intervening change in law, the Court should either (1) dismiss this appeal as moot and vacate the district court's judgment, or (2) review the constitutionality of the current law.

Respectfully submitted,

TIM GRIFFIN
  Arkansas Attorney General

AUTUMN HAMIT PATTERSON
  Solicitor General

NOAH P. WATSON
  Deputy Solicitor General

RYAN HALE
  Senior Assistant Attorney General

OFFICE OF THE ARKANSAS
  ATTORNEY GENERAL
101 West Capitol Avenue
Little Rock, AR 72201
(501) 295-2700
autumn.patterson@arkansasag.gov

*Attorneys for Defendant-Appellant*

7

## CERTIFICATE OF COMPLIANCE

I certify that this motion complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(C) because it contains 1,284 words, excluding the parts exempted by Fed. R. App. P. 32(f).

Pursuant to Fed. R. App. 27(d)(1)(E), I also certify that this motion complies with the requirements of Fed. R. App. P. 32(a)(5)-(6) because it has been prepared in 14-point Century Schoolbook, using Microsoft Word.

I further certify that this PDF file was scanned for viruses, and no viruses were found on the file.

*/s/Autumn Hamit Patterson*
Autumn Hamit Patterson

## CERTIFICATE OF SERVICE

I certify that on September 25, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which shall send notification of such filing to any CM/ECF participants.

*/s/Autumn Hamit Patterson*
Autumn Hamit Patterson

8